Q7DGspaC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

UNITED STATES OF AMERICA,

        v.                         26 Cr. 278 (AT)

MICHELE SPAGNUOLO,

                                        Conference

          Defendant.

-------------------------------x

                                        New York, N.Y.
                                        July 13, 2026
                                        10:15 a.m.

Before:

                        HON. ANALISA TORRES,

                                      District Judge

                          APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  RYAN B. FINKEL
     THOMAS SOMERSET BURNETT
     ALLISON C. NICHOLS
     Assistant United States Attorneys

HECKER FINK LLP
     Attorneys for Defendant
BY:  SHAWN G. CROWLEY
     MICHAEL FERRARA
     ANDREW L. CHESLEY

Q7DGspaC

(Case called)

MR. FINKEL:  Good morning, your Honor.  Ryan Finkel, Thomas Burnett, and Allison Nichols for the government.

MS. CROWLEY:  Good morning, your Honor.  Shawn Crowley from Hecker Fink.  I am joined by my colleagues Michael Ferrara and Andrew Chesley, and we represent Mr. Spagnuolo, who is present in court.

THE DEFENDANT:  Good morning, your Honor.

MS. CROWLEY:  Please be seated.

Mr. Finkel, would you like to tell me the status of discovery?

MR. FINKEL:  Yes, your Honor.  Your Honor entered a protective order in this case last week.  We received a hard drive or USB drive from the defense also last week.  We are in the process of compiling and producing discovery.  We expect to be substantially completed with production by the end of next week, with the bulk of it getting out this week.

THE COURT:  And how much discovery is there?

MR. FINKEL:  Your Honor, I would say there's a moderate amount of discovery.  It consists of the defendant's cell phone, a social media account used by the defendant, information from Google, the victim in this case, and several subpoena returns relating to things like cryptocurrency transactions.  There's some discovery, some of it is technical, but I wouldn't say this is a voluminous amount of discovery.

Q7DGspaC

THE COURT:  I am addressing now defense counsel.

Do you have a sense of how much time you need to review discovery?

MS. CROWLEY:  Judge, the discovery that Mr. Finkel just described should not take us too long to review.  However, we have just now handed the government a fairly lengthy letter making requests for additional fairly voluminous discovery.  We are going to meet and confer with the government about that before we have to raise anything with your Honor.

As I'm sure the Court is aware, this is not a typical insider trading case.  Even if it were, there's a lot that we would need to investigate and look into before we would be prepared to make our defenses.  There are many issues here, however, your Honor, that are open and new questions that haven't been resolved.  The first is for purposes of the commodities fraud count.

As your Honor knows, the question of whether these bets, the alleged bets, are even "swaps" and regulated by the Commodities Exchange Act is an open question.  Although your Honor recently issued an opinion on this, Courts have gone both ways in civil cases.  We believe we have the better end of the argument, particularly in a criminal case, that these bets are not swaps at all.

THE COURT:  So you may be making a motion to dismiss that count?

Q7DGspaC

MS. CROWLEY:  We will certainly be making a motion to dismiss each count.  With respect to the wire fraud count, there's also new settled law that, in our view, forecloses the government's ability to prosecute.  And I am referring here to the Second Circuit's decision in *U.S. v. Chastain*, which is a case involving alleged insider trading on the OpenCNFT platform.

That case really stands for the proposition that the alleged MNPI that a defendant used to trade has to actually be commercially valuable to the company.  And we believe we are going to be able to show that the purported MNPI in this case — although we don't know exactly what it is.  The indictment suggests it is data relating to Google's year-end search results — is not actually commercially valuable to Google at all and, in addition, was public before any of the alleged trades were made.

There's also a very real question here, your Honor, around extraterritoriality.  Mr. Spagnuolo is an Italian citizen who was living in Switzerland when the alleged trades were made.  He made the trades or allegedly placed the trades on Polymarket, Polymarket.com, which is an international trading platform which the U.S. government goes out of its way to ban and expressly doesn't regulate.  So we are going to make a motion to dismiss the indictment.  We may be making a motion for a bill of particulars as well.

Q7DGspaC

The government has not identified the actual alleged trades that are at the basis for the charges here.  We are going to confer with them.  Perhaps they will point us to the discovery that they believe shows this, but we may be coming back to your Honor then as well.  I don't believe that Mr. Finkel said there are any search warrants that would be in the discovery, so we may not have a motion to suppress. Although, I think he said that Mr. Spagnuolo made statements to law enforcement, so there may be a motion on that as well.

Your Honor, I think that we could be prepared to make those motions within 30 days from today, but, of course, depending on what happens with our discovery requests, we may come back to the Court for additional relief.

THE COURT:  How about you meet and confer.  Figure out how long it's going to take to resolve any outstanding discovery requests, and then come up with a motion schedule. In other words, both sides propose a motion schedule.

Mr. Finkel.

MR. FINKEL:  Your Honor, the parties discussed that before your Honor took the bench this morning, and we have a proposed motion schedule.  As Ms. Crowley mentioned, the defense would like 30 days from today, approximately, to file their motions.  The government would request three weeks to file its opposition, and then the defense would have two weeks from that to file its reply.  I think that the parties will be

able to engage in good faith in resolving any resolvable issues without intervention from the Court.

Obviously with respect to what the defense laid out, the government has responses to all of the assertions that Ms. Crowley made.  The weight of the authority shows that these bets are swaps.  The defendant engaged in trades with Americans.  The information as alleged in the indictment, specifically, paragraph 2, shows it is commercially valuable.

To answer the question, there was a search warrant of the defendant's cell phone and his hotel room, in which, among other things, the FBI recovered a raccoon T-shirt and raccoon passport holder as well as the defendant's cell phone.  That will be in the discovery.  I do expect the defense will probably seek to move to suppress that.

With respect to the motion schedule, I think that the parties already have an agreement.  What we have also discussed is, in a couple of weeks, sending a letter to your Honor with proposed trial availabilities.  We don't think this should be a lengthy timeline for this matter.

THE COURT:  All right.  The defense motions are due on August 12th, the government's response on September 2nd, and the defense reply by September 16th.  And then by July 27th, I'd like a letter from the parties proposing trial dates.  I'm ready for trial, so it need not be a long date.

MR. FINKEL:  That's fine.  If it's helpful for your

Q7DGspaC

Honor, I think that the government's presentation of its evidence would take about a week.

THE COURT:  Are there any further applications?

MR. FINKEL:  The government would move to exclude time between now and September 16th to allow the defense to review the discovery and allow the defense to file the motions that they have indicated they wish to file.

MS. CROWLEY:  Your Honor, we have no objection to excluding time through the motion schedule.  There are just two additional points I would like to raise.  The first is we also are ready for trial and want to proceed quickly.  Mr. Spagnuolo is here separated from his family, and he's anxious to get this going.  I laid out for the Court that these are very complicated issues.  The government has been investigating Mr. Spagnuolo for quite some time.

We need to take the time to do the investigation that we need.  That's not to say that we are going to oppose a quick trial, it's just to make a record, your Honor, that there are serious issues here that we need to litigate and investigate and work with experts so we can fully defend our client.

The other is — and this is just for the Court's awareness — Mr. Spagnuolo entered the country on a tourist visa.  He was on vacation with his wife when he was arrested. He entered on a tourist visa through the visa waiver program, which is called the ESTA.  His ESTA status has been changed to

Q7DGspaC

no longer authorized to travel under the visa waiver program.

We've raised this with the government.  We don't really know what it means.  I believe they are working with the FBI to try to ensure he has legal status to stay here.  We just raise it with the Court on the off chance that if, God forbid, he gets picked up by immigration, we may need to make an immediate application to the Court.

THE COURT:  Mr. Finkel.

MR. FINKEL:  Your Honor, the defense is right that the defendant's immigration status is limited.  We are working to figure that issue out.  It's one of the reasons that a trial should, if there is to be a trial and no pretrial disposition, begin sooner rather than later.

THE COURT:  I don't know anything about this change in status.  In other words, I have no knowledge of these procedures, so I can not shed any light on that.  Of course it's only fair that, given that he is being prosecuted here, he not be apprehended by immigration.

MR. FINKEL:  Your Honor, the defendant's immigration status and what immigration authorities choose or choose not to do is something that is outside the control of the individuals that sit at this table, so we can only do so much.

THE COURT:  But it is the Executive Branch.

MR. FINKEL:  That's right, your Honor.  As a practical matter, there are different components of the Executive Branch,

Q7DGspaC

and not all of those components -- well, what I can say, your Honor, is that the people at this table and the government and the FBI are doing what is appropriate to ensure that the defendant has the status necessary given his current status, which is to say, as a charged individual awaiting trial in this country for crimes he committed -- alleged to have committed.

THE COURT:  If he should be apprehended, you may make an application to me immediately.

MS. CROWLEY:  Thank you, your Honor.  We raised the issue with the government about a month ago, so we are glad to hear they are working on doing what they can.  We will immediately tell you if something happens.

THE COURT:  I've decided that I would like to have a conference on October 5th at 9:00 a.m.

Mr. Finkel, are you adjusting your request with respect to the Speedy Trial Act?

MR. FINKEL:  Yes, your Honor.  We would move to exclude time between now and October 5th.

THE COURT:  Any objection?

MS. CROWLEY:  No, your Honor.

THE COURT:  Time is excluded under the Speedy Trial Act through October 5th of this year.  I find that the ends of justice served outweigh the interests of the public and the defendant in a speedy trial because this will allow time for the parties to finish producing discovery, reviewing discovery,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Q7DGspaC

preparing motions, and discussing a possible disposition.

All right then.  The matter is adjourned.

(Adjourned)