**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHELE SPAGNUOLO,<br><br>Defendant. | No. 26 Cr. 278 (AT) |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHELE SPAGNUOLO'S MOTION TO SUPPRESS POST-ARREST STATEMENTS AND FRUITS THEREOF

Shawn G. Crowley
Michael Ferrara
Andrew L. Chesley
Allison Durkin
Nicole Ng
J. Patrick Hornbeck II
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
scrowley@heckerfink.com
mferrara@heckerfink.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 6

I. Applicable Law .......... 6

II. The Court Should Suppress Mr. Spagnuolo's Post-Arrest Statements .......... 7

A. Mr. Spagnuolo Invoked His Right to Counsel .......... 7

B. The FBI Agents Wrongfully Continued Questioning Mr. Spagnuolo .......... 9

III. The Court Should Suppress Evidence Derived from Mr. Spagnuolo's Post-Arrest Statements .......... 12

A. The Fruit of the Poisonous Tree Doctrine Applies to Violations of the Fifth Amendment Right to Counsel .......... 12

B. The Court Should Suppress Evidence Obtained as a Consequence of the Unlawful Interrogation .......... 17

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

## CASES

*Arizona v. Roberson*,
486 U.S. 675 (1988) ........ 14

*Davis v. United States*,
512 U.S. 452 (1994) ........ 6, 9

*Diaz v. Senkowski*,
76 F.3d 61 (2d Cir. 1996) ........ 8

*Edwards v. Arizona*,
451 U.S. 477 (1981) ........ *passim*

*Irvin v. Annucci*,
No. 22 Civ. 4887, 2025 WL 1626188 (S.D.N.Y. Mar. 25, 2025), *report and recommendation adopted*, 2025 WL 1404488 (S.D.N.Y. May 15, 2025) ........ 9

*Maryland v. Shatzer*,
559 U.S. 98 (2010) ........ 10, 13

*McNeil v. Wisconsin*,
501 U.S. 171 (1991) ........ 6, 14

*Minnick v. Mississippi*,
498 U.S. 146 (1990) ........ 14, 15

*Miranda v. Arizona*,
384 U.S. 436 (1966) ........ *passim*

*Nix v. Williams*,
467 U.S. 431 (1984) ........ 12, 15

*Oregon v. Bradshaw*,
462 U.S. 1039 (1983) ........ 14

*Oregon v. Elstad*,
470 U.S. 298 (1985) ........ 15

*Silverthorne Lumber Co. v. United States*,
251 U.S. 385 (1920) ........ 18

*Smith v. Illinois*,
469 U.S. 91 (1984) ........ 10, 11

*United States v. Brathwaite*,
No. 17 Cr. 45, 2018 WL 1787943 (E.D.N.Y. Mar. 27, 2018), *report and recommendation adopted*, 2018 WL 1785484 (E.D.N.Y. Apr. 13, 2018)........................ 11

*United States v. Cannon*,
981 F.2d 785 (5th Cir. 1993) ........................................................................... 14

*United States v. Clark*,
683 F. Supp. 3d 97 (D. Mass. 2023) .................................................................. 17

*United States v. Curry*,
158 F.4th 153 (3d Cir. 2025) .................................................................. 14, 14, 15

*United States v. Eiland,*
No. 18 Cr. 3154, 2019 WL 2724077 (D. Neb. July 1, 2019)........................................... 16

*United States v. Figaro*,
568 F. Supp. 3d 459 (S.D.N.Y. 2021)....................................................................... 8

*United States v. Ghailani*,
743 F. Supp. 2d 242 (S.D.N.Y. 2010)....................................................................... 7

*United States v. Gilkeson*,
431 F. Supp. 2d 270 (N.D.N.Y. 2006)........................................................... 14, 16

*United States v. Lights*,
208 F. Supp. 3d 568 (S.D.N.Y. 2016)..................................................................... 11

*United States v. McCoy*,
407 F. App'x 514 (2d Cir. 2010) ........................................................................ 13

*United States v. Morris,*
No. 24 Cr. 358, 2024 WL 4699712 (S.D.N.Y. Nov. 6, 2024) ........................................... 8

*United States v. Patane*,
542 U.S. 630 (2004)................................................................................ 13, 13, 16

*United States v. Pinto-Thomaz*,
352 F. Supp. 3d 287 (S.D.N.Y. 2018)..................................................................... 13

*United States v. Rosenfeld*,
No. 23 Cr. 65, 2023 WL 8471947 (S.D.N.Y. Dec. 7, 2023) ................................... 7, 8, 11

*United States v. Scarpa*,
897 F.2d 63 (2d Cir. 1990)................................................................................... 9

*United States v. Seppala*,
No. 16 Cr. 436, 2017 WL 5633167 (S.D.N.Y. Nov. 22, 2017) .............................. 6, 7, 8, 9

*United States v. Thompson*,
35 F.3d 100 (2d Cir. 1994)........................................................................................ 7

*United States v. Wang*,
No. 23 Cr. 118, 2024 WL 1251105 (S.D.N.Y. Mar. 22, 2024) ........................ 6, 13, 15, 16

*Wong Sun v. United States*,
371 U.S. 471 (1963)............................................................................................. 7, 12

*Wood v. Ercole*,
644 F.3d 83 (2d Cir. 2011)..................................................................................... 6, 7, 8

## PRELIMINARY STATEMENT

Early on the morning of May 27, 2026, FBI agents entered the Manhattan hotel room where defendant Michele Spagnuolo, an Italian citizen who resides in Switzerland, was staying on vacation with his wife. They arrested Mr. Spagnuolo on a criminal complaint and took him to 26 Federal Plaza, where they interrogated him for well over an hour. Bewildered by what was happening to him, Mr. Spagnuolo told the agents, [redacted] and [redacted] But the agents pressed on. The next day, they issued a subpoena to Google, Mr. Spagnuolo's employer, for materials they learned about during that uncounseled interrogation.

The Fifth Amendment requires the suppression of the statements Mr. Spagnuolo made after invoking his right to counsel, along with the so-called "fruits" of those statements. The law has long been clear that, once a suspect requests counsel, interrogation must cease until an attorney is present. But the agents here ran roughshod over Mr. Spagnuolo's unambiguous request for counsel, which he never retracted.

The government should not be permitted to benefit from the agents' misconduct because the agents did more than ignore a procedural safeguard: they violated Mr. Spagnuolo's right to counsel. This Court recently recognized that distinction, observing that the Supreme Court and Second Circuit have not decided whether the "fruit of the poisonous tree" doctrine applies to statements obtained in violation of the right to counsel. But the Court's previous intuition that the doctrine *does* apply is precisely correct, both because the right to counsel is indispensable to the Fifth Amendment, and because allowing the government to use evidence derived from an unlawful interrogation would incentivize police misconduct.

For the reasons that follow, the Court should suppress the statements that Mr. Spagnuolo made after invoking his right to counsel, as well as their fruits.

**BACKGROUND**

Mr. Spagnuolo is an Italian citizen who lives in Switzerland. On May 22, 2026, he and his wife traveled to New York for their first trip without their two-year-old daughter. FBI agents began surveilling their movements upon their arrival in New York. Then, in the early morning hours of May 27, 2026, agents arrested Mr. Spagnuolo at the Manhattan hotel where he and his wife were staying. The agents seized his phone, hard drives, and other belongings pursuant to a search warrant. They gave him a written notice, in Italian, of his *Miranda* rights. *See* Ex. A, Report of May 27, 2026 Arrest (USAO_02_0000000157).[1] The agents whisked Mr. Spagnuolo away to 26 Federal Plaza. *See id.* [redacted] Prior to his arrest, Mr. Spagnuolo had never been questioned, much less detained, by U.S. law enforcement.

At 26 Federal Plaza, the agents interrogated Mr. Spagnuolo for more than 75 minutes. *See id.* At the outset, an agent verbally informed Mr. Spagnuolo of his *Miranda* rights, this time in English, which is not his native language. Ex. B, Video of May 27, 2026 Interrogation (USAO_01_0000000075) ("Interrogation") at 4:05–33. [Ex. C, Transcript of May 27, 2026 Interrogation ("Tr.") at 2.] [redacted]

[1] Citations to Ex. _ are to the exhibits attached to the Affirmation of Shawn G. Crowley in Support of Defendant Michele Spagnuolo's Motion to Suppress Post-Arrest Statements and Fruits Thereof, which is being filed simultaneously with this memorandum of law.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Mr. Spagnuolo was then transported to 500 Pearl Street and placed in the custody of the U.S. Marshals Service. Ex. A at USAO_02_0000000157–58. Later that day, he was presented before Magistrate Judge Netburn and released on bond. *See* Dkt. No. 3.

[redacted]

[2] Because the government has to date refused to disclose [redacted] or other grand jury subpoenas issued in connection with the investigation of Mr. Spagnuolo, the defense infers the contents of [redacted] from the cover letters accompanying Google's productions in response to the subpoena.

[redacted] Google subsequently produced these materials to the government beginning on July 9, 2026. *Id.* at USAO_04_0000004536–0000004541.[3]

The government continued its investigation thereafter and obtained an indictment on June 25, 2026, charging Mr. Spagnuolo with commodities fraud, wire fraud, and money laundering. Dkt. No. 17.

[3] The defense's understanding is that Google's productions to the government in response to the May 28 Subpoena remain ongoing. The defense reserves the right to seek to exclude additional materials that Google may produce in the future as further fruits of the unlawful May 27 interrogation.

**ARGUMENT**

**I. Applicable Law**

"The Fifth Amendment's prohibition against compelled self-incrimination guarantees that custodial interrogation 'must cease until an attorney is present' if the defendant requests counsel." *United States v. Wang*, No. 23 Cr. 118, 2024 WL 1251105, at *9 (S.D.N.Y. Mar. 22, 2024) (Torres, J.) (quoting *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). That is because "the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege." *Miranda*, 384 U.S. at 469. Thus, under *Edwards v. Arizona*, 451 U.S. 477 (1981), and its progeny, "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *Edwards*, 451 U.S. at 484, 485).

The invocation of the right to counsel must be "objectively clear to be effective." *United States v. Seppala*, No. 16 Cr. 436, 2017 WL 5633167, at *2 (S.D.N.Y. Nov. 22, 2017). "But 'a suspect need not speak with the discrimination of an Oxford don' to invoke this right." *Id.* (quoting *Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011)). And after a suspect has invoked the right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation." *Edwards*, 451 U.S. at 484.

If agents "do subsequently initiate an encounter in the absence of counsel," "the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991); *see Wood*, 644 F.3d at 90–91 ("Evidence collected in violation of a suspect's right to counsel is inadmissible as part of the prosecution's case-in-chief."). "[T]he fruits of illegally obtained evidence" are also not admissible against the defendant, unless the evidence derived from the violation "'has been come at . . . by means sufficiently

distinguishable to be purged of the primary taint.'" *United States v. Ghailani*, 743 F. Supp. 2d 242, 250 (S.D.N.Y. 2010) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). The government "bears the burden of showing admissibility." *United States v. Thompson*, 35 F.3d 100, 105 (2d Cir. 1994).

## II. The Court Should Suppress Mr. Spagnuolo's Post-Arrest Statements

The agents violated the Fifth Amendment by continuing to interrogate Mr. Spagnuolo after he invoked his right to counsel. Accordingly, the Court should suppress all the statements that Mr. Spagnuolo made after the first time that he requested an attorney.

### A. Mr. Spagnuolo Invoked His Right to Counsel

While en route to 26 Federal Plaza, before the interrogation began, Mr. Spagnuolo made clear he was considering invoking his right to counsel, [redacted] He then clearly invoked on at least two occasions. Just minutes into the interrogation, he told the agents: [redacted] Then, a few minutes later, he said: [redacted] The agents repeatedly acknowledged Mr. Spagnuolo's request for counsel, [redacted] yet continued to question him.

Courts in this Circuit have regularly found statements like Mr. Spagnuolo's to constitute an unambiguous invocation of the right to counsel. For instance, the Second Circuit has held that "[t]he statement 'I think I should get a lawyer' evidences no internal debate whatsoever." *Wood*, 644 F.3d at 91. So, too, have courts regularly concluded that defendants invoked the right to counsel by saying, "I think it's better if I take a lawyer," *United States v. Rosenfeld*, No. 23 Cr. 65, 2023 WL 8471947, at *6 (S.D.N.Y. Dec. 7, 2023), or asking, "[D]o I have an opportunity to call an attorney?," *Seppala*, 2017 WL 5633167, at *3; *see also id.* (collecting cases).

Mr. Spagnuolo's words closely track these cases, clearly indicating that he wanted to have a lawyer for the purpose of responding to the agents' questions during the immediate interrogation. If anything, his first invocation of the right to counsel, [redacted] is more definite than "I *think* I should get a lawyer." *See Wood*, 644 F.3d at 91 (emphases added). Likewise, there is little semantic difference between Mr. Spagnuolo's comment that [redacted] and another defendant's observation that "I think it's better if I take a lawyer." *See Rosenfeld*, 2023 WL 8471947, at *6. And although Mr. Spagnuolo did not directly ask whether he had the opportunity to *call* an attorney (understandably, as the agents had seized his phone) [redacted]. *See Seppala*, 2017 WL 5633167, at *3. As noted, Mr. Spagnuolo even brought up the possibility of speaking with a lawyer [redacted]

In contrast, Mr. Spagnuolo's words are distinguishable from cases where courts have concluded that defendants did *not* invoke the right to counsel. Mr. Spagnuolo did not merely ask, "Do I need my lawyer?", but instead affirmatively expressed his view that he [redacted] a lawyer and would [redacted] if one were present. *See United States v. Figaro*, 568 F. Supp. 3d 459, 465, 468–69 (S.D.N.Y. 2021); *Diaz v. Senkowski*, 76 F.3d 61, 63–64 (2d Cir. 1996) (similar). Nor did Mr. Spagnuolo make either of these statements as a "casual aside," akin to another defendant's remark, more than an hour into an interrogation, that "if I'm being charged with this . . . then get me a lawyer." *See United States v. Morris*, No. 24 Cr. 358, 2024 WL 4699712, at

*1–2 (S.D.N.Y. Nov. 6, 2024).[4] Mr. Spagnuolo's invocation of the right to counsel was hardly conditional, and he invoked that right within the interrogation's first few minutes.

In determining whether a suspect has invoked the right to counsel, courts may consider "a defendant's demeanor and prior criminal history." *Seppala*, 2017 WL 5633167, at *3 (citing *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)); *see also Irvin v. Annucci*, No. 22 Civ. 4887, 2025 WL 1626188, at *11 (S.D.N.Y. Mar. 25, 2025), *report and recommendation adopted*, 2025 WL 1404488 (S.D.N.Y. May 15, 2025). Like the defendant in *Seppala*, Mr. Spagnuolo "had no prior experience being interrogated by law enforcement," and the recordings of his arrest and interrogation show that he was "visibly bewildered" and "confused" by what was happening to him. *See* Ex. F, Video of May 27, 2026 Arrest (USAO_01_0000000078) at 3:25–30; *Seppala*, 2017 WL 5633167, at *1, 3. And that is no surprise: Mr. Spagnuolo was interrogated early in the morning after an unexpected arrest, in a language that was not his native one, while on vacation in a foreign country. To any extent the Court may be uncertain whether Mr. Spagnuolo invoked the right to counsel, both his demeanor and lack of prior criminal history counsel resolving any doubts in his favor. *See Seppala*, 2017 WL 5633167, at *3.

**B. The FBI Agents Wrongfully Continued Questioning Mr. Spagnuolo**

The FBI agents recognized that Mr. Spagnuolo had invoked his right to counsel—one of them repeated back to him that [redacted] Interrogation at 9:53–54. [Tr. at 4.] Under *Edwards* and its progeny, the interrogation should have stopped there. *Edwards*, 451 U.S. at 485–86; *Davis*, 512 U.S. at 457–58. But the agents brushed off Mr. Spagnuolo's request, telling him [redacted]

[4] In *Morris*, Judge Furman concluded that the defendant had not invoked his right to counsel by making this "conditional" statement, but characterized the question as "close." *Id.* at *2. Mr. Spagnuolo's statements that "I would like to have a lawyer" and "it would just be, make me feel better if there's like a lawyer present" are in every respect less equivocal.

[redacted], and continued their questioning.

And while the agents told Mr. Spagnuolo that [redacted], nothing in the recording of the interview suggests that Mr. Spagnuolo ever agreed to do that. Rather, when he continued talking with the agents, he did so to better understand his rights and the legal process. [redacted]

The agents' "persistence in trying to get [Mr. Spagnuolo] to talk" without a lawyer present is exactly the kind of conduct *Edwards* intended to prevent. *See Maryland v. Shatzer*, 559 U.S. 98, 105 (2010). That is because, as the Supreme Court has repeatedly recognized, "badgering or overreaching—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (cleaned up) (citing cases).

To be sure, a defendant who has invoked the right to counsel can later waive that right, but he must do so by doing something other than merely "respond[ing] to further police-initiated custodial interrogation." *Edwards*, 451 U.S. at 484. Mr. Spagnuolo continued speaking to the

agents in response to their ongoing questioning; he "did not retract his previous demand for a lawyer and he did not jump start a conversation about the merits of the investigation." *See Rosenfeld*, 2023 WL 8471947, at *8. In any case, "a valid waiver 'cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation,'" nor can a defendant's "subsequent responses" be used "to cast doubt on the adequacy of the initial request itself." *Smith*, 469 U.S. at 98–99 (quoting *Edwards*, 451 U.S. at 484).

All these circumstances distinguish Mr. Spagnuolo's case from cases such as *United States v. Brathwaite*, where the defendant, after asking for counsel, retracted that request by saying, "*It's fine.* I'd like to speak to an attorney, *but it's f-*." No. 17 Cr. 45, 2018 WL 1787943, at *8–9 (E.D.N.Y. Mar. 27, 2018) (emphases in original), *report and recommendation adopted*, 2018 WL 1785484 (E.D.N.Y. Apr. 13, 2018). Similarly, in *United States v. Lights*, 208 F. Supp. 3d 568, 572, 575–76 (S.D.N.Y. 2016), the defendant asked if he could call his attorney but then immediately clarified, "I ain't gonna call him yet."

Here, the agents capitalized on Mr. Spagnuolo's confusion to prolong the interrogation after he invoked his right to counsel. But Mr. Spagnuolo's request [redacted] is in no way akin to the statements that the *Brathwaite* and *Lights* courts found to be retractions. Mr. Spagnuolo never said that he found it "fine" or otherwise acceptable that no lawyer was present. *See Brathwaite*, 2018 WL 1787943, at *8. Nor did he decline the agents' invitation to call a lawyer immediately or say that he planned to speak to counsel after the interrogation but wished to proceed without a lawyer in the meantime. *See Lights*, 208 F. Supp. 3d at 572, 575–76. To the contrary, [redacted]

[redacted] the agents sought to take advantage of his interest in learning the evidence against him while he was detained, pressuring him to speak without the assistance of counsel he had already requested. *Edwards* prohibits such conduct. 451 U.S. at 484–85.

Considered in its entirety, the recording of Mr. Spagnuolo's interrogation does not indicate that he ever retracted his invocation of the right to counsel. [redacted] None of this is consistent with retraction or waiver.

In sum, because the agents continued interrogating Mr. Spagnuolo after he invoked his right to counsel, the Court should suppress all the statements he made after requesting an attorney.

## III. The Court Should Suppress Evidence Derived from Mr. Spagnuolo's Post-Arrest Statements

By questioning Mr. Spagnuolo in violation of his right to counsel, the agents discovered information relevant to this case which they then used to craft the [redacted]. They thereafter obtained such evidence from Google. That evidence was derived from the involuntary May 27 interrogation, and the Court should therefore suppress it.

### A. The Fruit of the Poisonous Tree Doctrine Applies to Violations of the Fifth Amendment Right to Counsel

As noted above, the exclusionary rule applies not only to "the illegally obtained evidence itself," but also to "evidence that [is] the indirect product or 'fruit' of [the] unlawful police conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984). In determining whether evidence constitutes "fruit of the poisonous tree," the question is whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 487–88.

The plurality in *United States v. Patane*, 542 U.S. 630 (2004), concluded that "failure to give *Miranda* warnings does not require suppression of physical evidence discovered as a consequence of unwarned statements that are voluntary and uncoerced." *United States v. McCoy*, 407 F. App'x 514, 516 (2d Cir. 2010) (summary order) (citing *Patane*, 542 U.S. at 637–44). But neither the Supreme Court nor the Second Circuit has decided whether *Patane*'s reasoning applies to the fruits of a suspect's statements obtained in violation of his right to counsel. *See Wang*, 2024 WL 1251105, at *10 ("[T]he Circuit has not yet determined whether the same standards of voluntariness apply for statements obtained in violation of *Edwards*."); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311 (S.D.N.Y. 2018) (observing that whereas the Supreme Court held that suppressing the fruits of "unwarned but voluntary [nontestimonial] statements was not required," "[t]he Court has made no such holding as regarding failure to end an interrogation after a defendant has asserted a *Miranda* right to counsel in violation of *Edwards v. Arizona*"). As this Court recently recognized, "[t]here is reason to believe that the answer may be different" when evidence is obtained in violation of *Edwards*. *Wang*, 2024 WL 1251105, at *10 n.7. That conclusion follows for two reasons.

*First*, failing to stop an interrogation after a suspect has requested counsel violates not just a prophylactic rule, but the very right to counsel secured by the Fifth Amendment. *Patane* rested on the observation that the requirement to provide *Miranda* warnings is a "prophylactic employed to protect against violations of the Self-Incrimination Clause." *Patane*, 542 U.S. at 636 (plurality op.). On that basis, the plurality concluded that because the "mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule," there was no need for a broad exclusionary rule extending to the fruits of unwarned statements. 542 U.S. at 641–42. Describing *Edwards* as "judicially prescribed prophylaxis," *Shatzer*, 559 U.S. at 105, some

courts have extended *Patane*'s reasoning by declining to exclude derivative evidence obtained as a result of an *Edwards* violation. *See United States v. Curry*, 158 F.4th 153, 160–61 (3d Cir. 2025); *United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993). But violating a suspect's right to counsel is not the same as violating a procedural safeguard. That "difference is dispositive." *United States v. Gilkeson*, 431 F. Supp. 2d 270, 292 (N.D.N.Y. 2006) (suppressing physical evidence obtained after defendant asserted his right to counsel).

The right to counsel is "indispensable to the protection of the Fifth Amendment privilege" and encompasses both "a right to consult with counsel prior to questioning" and the right "to have counsel present during any questioning if the defendant so desires." *Miranda*, 384 U.S. at 469–70. The right to counsel attaches where, as here, a suspect unequivocally requests to have an attorney present, and it is violated when agents ignore the invocation of the right and interrogate the suspect without counsel. *See Minnick v. Mississippi*, 498 U.S. 146, 152–53 (1990); *Curry*, 158 F.4th at 164–65 (Restrepo, J., dissenting); *see also Oregon v. Bradshaw*, 462 U.S. 1039, 1043 (1983) (proceeding with interrogation after suspect invokes right to counsel "without his attorney present violate[s] the rights secured to the defendant by the Fifth . . . Amendment[] to the United States Constitution"). The suspect's subsequent statements are "presumed involuntary," *McNeil*, 501 U.S. at 177, and "the result of coercion," *Curry*, 158 F.4th at 164 (Restrepo, J., dissenting). *See also Arizona v. Roberson*, 486 U.S. 675, 681 (1988). As Judge Restrepo explained in dissent in *Curry*, whereas "warning a suspect of the right to counsel is prophylactic," a suspect's "invocation of that right is entitled to protection under the Fifth Amendment." 158 F.4th at 164. And when a suspect is questioned after he has invoked, he "suffer[s] the precise constitutional harm the Fifth Amendment right to counsel seeks to prevent—giving an incriminating response while subject to a custodial interrogation." *Id.* at 165.

Although it has not reached the exact question presented here, the Supreme Court has recognized that violations of procedural safeguards like *Miranda* warnings are different from violations of a suspect's Fifth Amendment rights. In *Oregon v. Elstad*, the Supreme Court distinguished failure-to-warn cases from violations of the right to counsel, describing cases involving a failure to provide *Miranda* warnings as "inapposite" to cases involving "suspects whose invocation of their rights to remain silent and to have counsel present were flatly ignored while police subjected them to continued interrogation." 470 U.S. 298, 312 n.3 (1985); *see also id.* at 346 n.28 (Brennan, J., dissenting) (noting that where "authorities have ignored the accused's actual invocation of his *Miranda* rights to remain silent or to consult with counsel . . . courts should continue to apply the traditional presumption of tainted connection"). This Court, too, has distinguished *Miranda* violations from violations of the right to counsel. "The merit of the *Edwards* decision lies in the clarity of its command and the certainty of its application." *Wang*, 2024 WL 1251105, at *10 n.7 (quoting *Minnick*, 498 U.S. at 151).

Thus, when an interrogation continues after a suspect has invoked the right to counsel, his Fifth Amendment rights have been violated. When the "primary illegality" of "flatly ignoring [a suspect's] invocation of [his] right to counsel and continuing [an] interrogation" is then exploited by the government, any subsequently obtained evidence must be suppressed. *Curry*, 158 F.4th at 165 (Restrepo, J., dissenting).

*Second*, applying the exclusionary rule to evidence obtained as a consequence of an *Edwards* violation serves that rule's very purpose: to deter police misconduct. *See Nix v. Williams*, 467 U.S. 431, 442–43 (1984) (recognizing that the "core rationale . . . for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been . . . to deter police from violations of constitutional and statutory protections"). Although *Patane* concluded

that the exclusion of unwarned statements is "a complete and sufficient remedy" for the failure to warn, 542 U.S. at 643, excluding a suspect's post-arrest statements alone is insufficient to deter the police from disregarding a suspect's invocation of the right to counsel. That is because admitting derivative evidence obtained after a suspect invokes the right to counsel would in fact incentivize misconduct, as this Court has recognized:

> As a practical matter, once an arrestee has invoked the right to counsel, the police know that the interview is the last opportunity they will have to interrogate the arrestee without counsel. There is no incentive to cease questioning if the arrestee can be induced to make incriminating statements or to reveal information which leads to physical evidence that can be admitted in a subsequent criminal case. The fact that the statements themselves would not be admissible is not a sufficient remedy to protect the individual's right to be free from compelled self-incrimination.

*Wang*, 2024 WL 1251105, at *10 n.7 (quoting *Gilkeson*, 431 F. Supp. 2d at 294); *see United States v. Eiland*, No. 18 Cr. 3154, 2019 WL 2724077, at *5 (D. Neb. July 1, 2019) ("To suppress [the defendant's] statement alone . . . would create a disincentive for law enforcement to stop questioning a detainee if he or she could possibly be induced to reveal information leading to incriminating physical evidence that could be admitted in a subsequent criminal trial.").

In other words, agents would have nothing to lose by ignoring a request for counsel and pressing ahead with questioning, because even though a suspect's statement might be suppressed, the government would have lost the statement anyway had agents honored the suspect's request for counsel and stopped the interrogation. On the contrary, in the absence of a rule excluding the fruits, agents would have everything to gain by pressing ahead: the discovery of physical evidence that they might not have otherwise learned about.[5]

[5] *See* Yale Kamisar, *Postscript: Another Look at* Patane *and* Seibert*, the 2004* Miranda *"Poisoned Fruit" Cases*, 2 Ohio St. J. Crim. L. 97, 105, 106 n.42 (2004).

### B. The Court Should Suppress Evidence Obtained as a Consequence of the Unlawful Interrogation

That is exactly the scenario that unfolded when the agents continued questioning Mr. Spagnuolo after he invoked his right to counsel. Under *Edwards*, all of the statements he made after requesting a lawyer were involuntary. Neither Mr. Spagnuolo's conduct nor any other circumstance of the interrogation disturbs the presumption of involuntariness that attached once he requested a lawyer. *See United States v. Clark*, 683 F. Supp. 3d 97, 108–09 (D. Mass. 2023) (presuming defendant's answers were involuntary once she invoked the right to counsel and holding exclusionary rule "bars all use of the statements and evidence obtained").

But by disregarding Mr. Spagnuolo's right to counsel, the agents [redacted] Indeed, not one of the search warrants the government prepared before Mr. Spagnuolo's interrogation—each of them signed by the same agent who questioned him—suggests in any way that the government knew about the materials it sought a day later. [redacted] Issuing

a subpoena based on the contents of Mr. Spagnuolo's interview in no way cured the primary taint of illegality that allowed the agents to discover the requested information in the first place. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 391 (1920) (rejecting government's attempt to "maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had" by precluding the use of illegally seized evidence to formulate grand jury subpoenas).

Because the government should not be allowed to benefit from violating Mr. Spagnuolo's right to counsel, the Court should suppress all the evidence that the government obtained as a consequence of statements that Mr. Spagnuolo made after he invoked the right to counsel.

## CONCLUSION

For the foregoing reasons, the Court should suppress the statements that Mr. Spagnuolo made after invoking his right to counsel on May 27, 2026, along with the fruits of those statements, or, at a minimum, order a suppression hearing.

Dated: New York, New York
August 26, 2026

Respectfully submitted,

Shawn G. Crowley
Michael Ferrara
Andrew L. Chesley
Allison Durkin
Nicole Ng
J. Patrick Hornbeck II
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883
scrowley@heckerfink.com
mferrara@heckerfink.com

*Attorneys for Michele Spagnuolo*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, I electronically filed a redacted version of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of Electronic Filing to the following: Thomas Burnett, Ryan Finkel, and Allison Nichols, Assistant United States Attorneys, 26 Federal Plaza, 38th Floor, New York, NY 10278.

Copies of the unredacted document and of the sealed exhibits have been served by electronic mail on AUSAs Thomas Burnett, Ryan Finkel, and Allison Nichols.

