Hecker Fink LLP

NEW YORK | WASHINGTON, DC | LOS ANGELES

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

TEL (212) 763-0883 | FAX (212) 564-0883
WWW.HECKERFINK.COM

scrowley@heckerfink.com

November 18, 2026

**BY CM/ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Spagnuolo*, 26 Cr. 278 (AT)

Dear Judge Torres:

We write on behalf of Michele Spagnuolo to respectfully request that the Court not adjourn the suppression hearing and oral argument scheduled for December 21, 2026. The government has noticed its appeal of the Court's ruling granting Mr. Spagnuolo's motion to suppress his post-arrest statements, but that notice does not require the Court to alter its plans. Indeed, as discussed below, conducting the planned hearing and argument would promote judicial economy, avoid undue prejudice to Mr. Spagnuolo, and keep the case moving.[1]

As Your Honor is aware, on August 26, 2026, Mr. Spagnuolo moved to dismiss the indictment against him as well as to suppress his post-arrest statements and their fruits. Dkt. 40, 43. On October 19, 2026, the Court granted Mr. Spagnuolo's motion to suppress his statements, concluding that "law enforcement violated *Edwards* by continuing to interrogate Spagnuolo after he invoked his right to counsel." Dkt. 57 at 9. As to the prong of Mr. Spagnuolo's motion seeking suppression of the fruits of his statements, Your Honor reasoned that a suppression hearing was necessary to evaluate the government's assertions that it "had an independent source for, or would

[1] Polymarket's counsel emailed the government the wallet addresses associated with the AlphaRaccoon account on December 5, 2025, but for the next several months the government appears to have taken few steps to investigate Mr. Spagnuolo and his purported connection to AlphaRaccoon's Year in Search bets. For example, the government did not subpoena records from Google concerning Mr. Spagnuolo until *after* law enforcement arrested him and pressed him—unlawfully, as the Court has now found—to divulge evidence essential to its case. After Mr. Spagnuolo was indicted, the government informed us that it would be prepared to try this case around Thanksgiving, similarly informing the Court at the July 13, 2026, initial conference that "we don't think this should be a lengthy timeline for this matter." Dkt. 25 at 6. Yet Thanksgiving is just around the corner, and the government has yet to even identify with specificity the Polymarket bets Mr. Spagnuolo allegedly made using confidential information and the material, non-public information that he purportedly used to place those alleged bets. *See* Dkt. 46. Those failures are likely the results of the government's haste to charge before investigating. There are others. For example, though the government has produced to us an image of Mr. Spagnuolo's phone, which it seized at the time of his arrest in May, it has yet to produce information from that phone that it believes the search warrant allows it to seize and use at trial. The government had told Mr. Spagnuolo that it would do so in October.

have inevitably discovered," those fruits. *Id.* at 10. The Court originally scheduled the suppression hearing for October 29, 2026, and Mr. Spagnuolo agreed to the government's request to adjourn it until after Thanksgiving based on what we understood to be the government's good faith representation that it was working on understanding the suppression order and the scope of the hearing. At the parties' joint request, on October 23, 2026, the Court set the current December 21 date for the hearing, and the Court later scheduled oral argument on Mr. Spagnuolo's motion to dismiss on the same date. Dkt. 61. To prepare for the hearing and facilitate discussion of the fruits potentially subject to suppression, on October 27, 2026, Mr. Spagnuolo sent the government a request for documents relevant to the independent source and inevitable discovery exceptions. To date, the government has not even responded to Mr. Spagnuolo's request, let alone produced a single document.

Yesterday, the government filed a notice of its appeal from the Court's order suppressing Mr. Spagnuolo's statements. *See* Dkt. 65. We understand the government's position to be that its notice of appeal divests the Court of jurisdiction over the balance of Mr. Spagnuolo's motion as to whether evidence derived from Mr. Spagnuolo's unlawful interrogation must be suppressed. That position, at least in these circumstances, is incorrect.

As the Second Circuit has repeatedly noted, the rule that the filing of a notice of appeal divests a district court of jurisdiction is "not a per se rule," nor is it grounded in statute. *Carroll v. Trump*, 88 F.4th 418, 433–34 (2d Cir. 2023); *see United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989). Rather, it is a "judicially crafted rule rooted in the interest of judicial economy." *Carroll*, 88 F.4th at 433; *accord United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). Its application "is guided by concerns of efficiency and is not automatic." *Carroll*, 88 F.4th at 433. The touchstone is fidelity to the rule's purpose, which is to "avoid confusion or waste of time." *Id.*

Here, the rule's purpose counsels strongly in favor of proceeding with the suppression hearing and oral argument for which the parties (or at least Mr. Spagnuolo) have been preparing. Adopting the government's position would require the Court to delay Mr. Spagnuolo's trial, presently scheduled to begin June 1, 2027, until well after the Second Circuit has disposed of the government's appeal—a process that in criminal appeals presently takes a median of 16.2 months.[2] In the event that the Second Circuit affirms, this Court would then conduct the suppression hearing and rule on the balance of Mr. Spagnuolo's motion. Should the Court rule in Mr. Spagnuolo's favor on the suppression of the fruits of his statements, the government would then be entitled to a *second* interlocutory appeal. In total, close to three years would pass—while the pending charges would continue to ruin Mr. Spagnuolo's professional prospects and personal life. Even in the event that the Second Circuit reverses and a suppression hearing is unnecessary, close to a year and a half will have passed.

In contrast, proceeding with the suppression hearing and oral argument while the Second Circuit considers the government's appeal would serve judicial economy and plainly avoid wasting time. *See Rodgers*, 101 F.3d at 251. Should the Court grant Mr. Spagnuolo's motion to dismiss, of course, that would immediately moot any further proceedings on his motion to suppress.

[2] Administrative Office of the U.S. Courts, *U.S. Courts of Appeals—Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2025*, https://www.uscourts.gov/sites/default/files/document/jb_b4a_0930.2025.pdf.

Moreover, Mr. Spagnuolo will be unduly prejudiced if the suppression hearing is continued because the key witnesses' memories will only fade over time. By contrast, if the suppression hearing is held promptly, the Court would have the option to issue an indicative ruling on the fruits issue that would surely be of assistance to the Second Circuit and potentially obviate a successive, second appeal. *See* Fed. R. Crim. P. 37(a)(3).

During the same call yesterday in which the government gave notice of its intent to appeal the Court's ruling, the government also informed us that, following resolution of its appeal (and before any subsequent suppression hearing on the fruits of Mr. Spagnuolo's statements), it intends to seek a superseding indictment charging Mr. Spagnuolo with using inside information to place bets on Polymarket concerning the release date of Gemini 3.0, a Google AI model. Those forthcoming charges would apparently be based solely on information that Mr. Spagnuolo divulged during his unlawful interrogation. Among other things, Mr. Spagnuolo told the agents where any Google employee could find Gemini release date information in Google's systems. The day after the interrogation, the government issued a subpoena to Google seeking that very information, which Google produced on August 27, 2026. These are quintessential fruits of Mr. Spagnuolo's unlawful interrogation that should be suppressed rather than used to obtain new charges.

Indeed, the government's intent to seek a superseding indictment is all the more reason to proceed with the December 21 suppression hearing, which will determine whether the government can rely on key evidence to prove the potential new charges against Mr. Spagnuolo. Mr. Spagnuolo will be prepared to address on December 21 whether the government is entitled to use the fruits of his statements relating to Gemini 3.0, and expects that the government will be prepared to do so as well. As Judge Motley observed decades ago, where delay in a case is the result of a "conscious government decision," it is "not only undue" but can be "prima facie prejudicial." *United States v. Blanca Perez*, 310 F. Supp. 550, 551 (S.D.N.Y. 1970).

For all of these reasons, Mr. Spagnuolo respectfully requests that the Court conduct the suppression hearing and oral argument as scheduled on December 21, 2026.

Respectfully submitted,

Shawn G. Crowley
Michael Ferrara
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
scrowley@heckerfink.com
mferrara@heckerfink.com

Counsel for Michele Spagnuolo

cc: AUSAs Thomas Burnett, Ryan Finkel, Allison Nichols